PEOPLE ex rel. ROCHESTER TELEPHONE CO. v. STATE BOARD OF TAX COM'RS.

(Supreme Court, Special Term, Monroe County. March 20, 1912.)

1. TAXATION (§ 40*)—SPECIAL FRANCHISES—INEQUALITY.

Assessments of special franchises in a city at their full and true value, while under the general and prevailing practice real estate in the city is assessed below its actual value, make them open to the objection of inequality, for which they should be reduced proportionately.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 68–89; Dec. Dig. § 40.*]

2. EVIDENCE (§ 333*)—DOCUMENTS—MEMORANDA IN TAX RECORDS.

That a special report was demanded by the State Board of Tax Commissioners of one subject to taxation on a special franchise, with the result that, having failed to furnish it, he, under the provision of Tax Law (Consol. Laws 1909, c. 60) § 44, forfeited the right to review the assessment by certiorari, is not sufficiently shown by a mere memorandum in a book kept in the office of the board to the effect of the demand having been mailed on a certain day; receipt of any such demand being disaffirmed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1247–1257, 1259–1265; Dec. Dig. § 333.*]

3. TAXATION (§ 496*)—SPECIAL FRANCHISES—REVIEW OF ASSESSMENT—FORFEITURE—BURDEN OF PROOF.

The State Board of Tax Commissioners claiming that one subject to taxation on a special franchise has, under Tax Law (Consol. Laws 1909, c. 60) § 44, forfeited his right to review the assessment by certiorari by

not furnishing a special report within the time specified in its demand, has the burden of showing, not only the demand, but that it allowed a reasonable time.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec. Dig. § 496.*]

4. TAXATION (§ 496*)—SPECIAL FRANCHISES—REVIEW OF ASSESSMENT—FORFEITURE—REPORTS.

One subject to taxation on a special franchise did not, under Tax Law (Consol. Laws 1909, c. 60) § 44, forfeit right to review by certiorari the assessment, because of failure to furnish the State Board of Tax Commissioners a general financial statement, the statute not in terms requiring such a report annually, he having furnished one the year before, and not having been chargeable with notice of any general custom of the board to require one every year, and there being no sufficient evidence of a demand by it therefor, but its correspondence indicating that a special report as to tangible property was all that it required.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec. Dig. § 496.*]

Certiorari, on the relation of the Rochester Telephone Company, against the State Board of Tax Commissioners to review special franchise assessments. Orders for relator.

Hubbell, Taylor, Goodwin & Moser (Fred C. Goodwin, of counsel), for relator.

William Butler Crittenden, for the State Board.

William W. Webb (John M. Stull, of counsel), for City of Rochester.

SUTHERLAND, J. [1] The evidence shows that the franchises owned by the relator were assessed in the city of Rochester at their full and true value, but that the general and prevailing practice of the local assessors in Rochester has been during all said years to assess real estate in said city below its actual value, in 1901 and 1902 the assessment being 80 per cent., in 1904 and 1905, 79 per cent., and in 1910, 85 per cent. of the actual value. The assessments complained of are therefore open to the objection of inequality, and should all be reduced for these years to the basis on which the general real estate of said city was assessed, unless, with respect to the action of the State Board in 1901 and 1902, the special defense interposed is efficacious. The motion of the respondents to amend the return as to the proceedings for 1901 and 1902 so as to set up that defense is granted, and the evidence taken provisionally to establish that defense will be considered as duly received.

That defense is that the relator did not furnish the State Board of Tax Commissioners certain reports during these years which were required by it. Particularly the claim is made that before the Commissioners made their final assessment upon the special franchises March 23, 1901, the relator was requested by the State Board in October, 1900, and again in February, 1901, to file a special report showing the valuation of its tangible property in each ward separately, and that this was not furnished until January, 1902, long after the assessment made in 1901 had become irrevocable.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Section 44 of the Tax Law (Consol. Laws 1909, c. 60) requires every person or corporation subject to taxation on a special franchise, within 30 days after such special franchise is acquired, to make a written report to the State Board of Tax Commissioners, containing a full description of every special franchise possessed or enjoyed by such person or corporation, together with any other information relating to the value of such special franchise as required by the State Board. The State Board may also, from time to time, require a further or supplemental report from any such person or corporation, containing information and data upon such matters as it may specify. Then comes the penalizing provision:

"Every person, copartnership, association or corporation failing to make the report required by this section, or failing to make any special report required by the State Board of Tax Commissioners within a reasonable time specified by it, shall forfeit to the people of the state the sum of one hundred dollars for every such failure, and the additional sum of ten dollars for each day that such failure continues, and shall not be entitled to review the assessment by certiorari, as provided by section 46 of this chapter."

[2, 3] To show that a special report was required of the relator by the State Board in October, 1900, giving the valuations by wards of its tangible property, the respondents depend largely upon the practice of the State Board in this respect, which it had adopted, and upon certain entries in a book kept in the office of the State Board in which, when reports were requested, a memorandum was customarily minuted as to the date of the mailing of the request and blanks for such report. The person mailing the request and blanks was not called as a witness, nor was the person making the entry; and I do not think the memorandum in the book referred to, if competent for any purpose whatsoever, is adequate evidence of the mailing of such request. In the letters which later were sent by the relator's officers and counsel to the State Board, they disaffirm any knowledge or record of the receipt of any such request, and evidence is lacking to establish any default by the relator, down to some time in February, 1901, when Mr. Erhardt, a special examiner in the employ of the State Board, called the attention of the relator's officers at Rochester to the fact that the State Board required this special report by wards. It would seem clear from the evidence of Mr. Fuller, who then was the secretary of the relator, that it was impossible, after the demand by Erhardt, to prepare any such report by wards in time to be presented to the State Board before they took final action March 23, 1901. Now the burden of proof is on the State Board to show that demand was made for this special report, and that the relator failed to furnish that report within the time specified, which must be a reasonable time. People ex rel. N. Y. C. & Q. C. R. R. Co. v. State Board, 55 App. Div. 218, 67 N. Y. Supp. 69. The defense does not seem to me to be made out for the proceeding of 1901, for it is not shown that after demand a reasonable time was given relator before the assessment became fixed.

[4] As to the proceeding for 1902, the claim is made by the respondents that although a special report as to the value of tangible property was made for each ward of the city in January, 1902, and

before the valuation of the franchises of the relator was fixed by the State Board in 1902, there was default made in that year by the relator in furnishing a general financial statement such as it was the practice of the State Board to require every year. In this respect, the respondent's witnesses say they do not find any such general report on the files for the year 1902, and probably no such report was made by the relator that year. But it is still incumbent upon the respondents to prove that a demand for such report was seasonably made. The statute does not, in terms, require annual reports. To show a demand we have the same kind of proof offered by the entries in the book above referred to; but we do not have the testimony of any one who says he mailed such a demand or made such a demand upon the relator personally, and in the correspondence between the relator and the State Board in January, 1902, at the conclusion of which the detailed report of tangible property by wards was filed, the furnishing of any other or general financial report for that year was not suggested. The Secretary of the State Board wrote as follows, under date of January 29th, to the relator:

"Your letter with enclosures received. The supplemental blanks filled out for Ward 1 will answer our purposes for this year, and if you will kindly return the information for the other wards at an early date, you will much oblige."

This letter was fully complied with, and it does not appear that any subsequent request was made for any further report in any respect prior to the fixing of the valuation of the franchise in the year 1902.

A general financial report had been made the year before. The taxation of special franchises had very recently been inaugurated in this state, and it would seem that the relator, in the absence of express notice to the contrary, was entirely justified in supposing that every requirement of the State Board had been complied with to January 29, 1902. The relator could not then be charged with notice of any general custom of requiring a general financial report of all franchise holders, in addition to an annual special report as to tangible property. Accordingly, I find that the special defense based upon an alleged failure to file a general financial report in the year 1902 has not been made out.

It would seem, therefore, that the relator is entitled to a final order in each of the proceedings now pending, reducing the valuation as fixed in each of said years to the percentages respectively indicated above, and for a refund of the extra tax so paid in each of said years.

Let an appropriate order for each of said years be entered accordingly.